## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**OPTIV SECURITY INC.,**

     Plaintiff,

v.

**DEFY SECURITY, LLC;**       Case No. _____
**JUSTIN DOMACHOWSKI; and**
**JEREMY GILBERT,**

    Defendants.

---

## VERIFIED COMPLAINT FOR INJUNCTIVE
## AND OTHER RELIEF AND JURY DEMAND

---

   Plaintiff Optiv Security Inc. ("Optiv" or the "Company"), for its Verified Complaint for Injunctive and Other Relief against Defendants Defy Security, LLC ("Defy"), Justin Domachowski ("Domachowski"), and Jeremy Gilbert ("Gilbert") (collectively referred to herein as "Defendants"), states as follows:

### INTRODUCTION & SUMMARY OF THE FACTS

   1.  This action arises out of Defendants' flagrant violations of the law in order to find a shortcut to success. Defendants' wrongdoing include misappropriation of Optiv's confidential and trade secret information, Domachowski's and Gilbert's respective breaches of certain contractual commitments made in connection with their employment with Optiv, and Defy's

64927646.4

encouragement of Domachowski's and Gilbert's unlawful conduct in an effort to improperly and tortiously divert Optiv clients away to Defy's competing electronic security business.

2.      In 2012, Domachowski and Gilbert each executed a Confidentiality and Non-Competition Agreement ("Agreement") in connection with their employment.  True and correct copies of Domachowski's Confidentiality and Non-Competition Agreement and Gilbert's Confidentiality and Non-Competition Agreement are attached hereto as **Exhibit A** and **Exhibit B**, respectively, and incorporated herein by reference.

3.      In the Agreement, Domachowski and Gilbert each agreed, *inter alia*, that they would maintain certain Confidential Information (defined in the Agreement) strictly confidential and not disclose or use Confidential Information for reasons other than as authorized by Optiv. *See* Ex. A, ¶ 3; Ex. B, ¶ 3.

4.      Domachowski and Gilbert also each agreed, *inter alia*, that for one year following the end of their respective employment, they would not solicit or accept business with certain Prohibited Customers (defined in the Agreement), assist any other person or entity in soliciting or accepting business with Prohibited Customers, request or advise Prohibited Customers to withdraw business from Optiv, or disclose information about past, present, or prospective customers of Optiv.  *See* Ex. A, ¶ 4; Ex. B, ¶ 4.

5.      Domachowski and Gilbert further agreed not to solicit Optiv employees for two years following the end of their respective employment.  *See* Ex. A, ¶ 5; Ex. B, ¶ 5.

6.      Domachowski voluntarily left his employment with Optiv on June 23, 2017.

7.      Upon information and belief, immediately upon leaving his employment with Optiv, Domachowski formed and/or began working for Defy, a direct competitor of Optiv.

2

8.      Gilbert voluntarily left his employment with Optiv on December 29, 2017.

9.      Upon information and belief, Domachowski suggested, solicited, or encouraged Gilbert to leave his employment with Optiv and become employed by Defy, where Gilbert is currently employed.

10.     Upon information and belief, Defy was formed by and/or employs other former Optiv employees, including, without limitation Paul Giorgi.

11.     Since Defy was formed in 2017, this entity has, with Domachowski's and/or Gilbert's help, engaged in the solicitation of Optiv employees to leave their employ and work at Defy, improperly solicited Optiv's customers and/or encouraged them to withdraw business from Optiv, and have used Optiv's confidential information for Defendants' personal gain, to the detriment of Optiv.

12.     As a result of their unlawful conduct, Optiv has suffered irreparable injury including, among other things, loss of clients and goodwill.

13.     Unless Domachowski and Gilbert are enjoined from violating their respective legal obligations to Optiv, and Defy is enjoined from tortiously interfering with the Domachowski's and Gilbert's Agreement and Optiv's client relationships, and Defendants are enjoined from using Optiv's confidential and trade secret information, Defendants' improper actions will continue to cause Optiv irreparable injury.

## PARTIES AND JURISDICTION

14.     This is an action seeking injunctive relief and other relief based on Defendants' violation of Colorado law and Domachowski's and Gilbert's breaches of their respective Agreements.

3

15.     Optiv is a Delaware corporation, operating its principal place of business at 1144 15th Street, Suite 2900, Denver, Colorado 80202.

16.     Upon information and belief, Domachowski is a resident and citizen of the State of Pennsylvania and is domiciled at 459 Ironwood Drive, Canonsburg, Pennsylvania 15317.

17.     Upon information and belief, Gilbert is a resident and citizen of the State of New York and is domiciled at 14 Crofton Drive, West Seneca, New York 14224.

18.     Defy is a Pennsylvania limited liability company with its principal place of business at 2400 Ansys Drive, Suite 102, Canonsburg, Pennsylvania 15317, with at least one additional location at 1000 Town Center Blvd, Suite 140, Canonsburg, PA 15317 .

19.     Upon information and belief, no member of Defy is a citizen of Colorado.

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy exceeds $75,000.00.[1]

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because at least one claim is based on a federal question; specifically, Plaintiff's cause of action brought pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.

22.     This Court has supplemental subject matter jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

---

[1] As discussed in this Verified Complaint, Optiv has suffered irreparable harm as a result of Defendants' actions that cannot be fully quantified.  To the extent that such harm could even be estimated, it is in excess of $2,400,000.00. This number does not truly represent the harm Defendants' conduct has caused Optiv, as Optiv continues to suffer irreparable injury including, among other things, loss of clients and goodwill.

4

23.    This Court has personal jurisdiction over Domachowski and Gilbert because each consented to the personal jurisdiction of this Court.  *See* Ex. A, ¶ 14; Ex. B, ¶ 14; *See Greenway Nutrients, Inc. v. Blackburn,* 2015 WL 1539027 (D.Colo. 2015) (Krieger, CJ).

24.    This Court also has personal jurisdiction over all Defendants because Defendants have engaged in tortious conduct within or directed to this District.

25.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 and pursuant to Paragraph 14 of the Agreements.

## GENERAL ALLEGATIONS

### Optiv's Business and Domachowski's and Gilbert's Role in that Business

26.    Optiv is engaged in the highly competitive business of providing cyber security and related services to companies throughout the United States.

27.    Optiv employs various technicians, sales team members, and other employees throughout the country to better service its clients.

28.    Optiv invests substantial resources in marketing, real estate, promotional activities, and the provision to the public of professional, credible, and trustworthy cyber security services.  Association with Optiv imbues its employees with a heightened credibility associated with the Optiv brand—certainly in comparison to others who have not had the benefit of working for Optiv.

29.    Domachowski and Gilbert began working for Optiv's predecessor entity Accuvant, Inc. ("Accuvant") in 2012.

30.    In 2015, Accuvant and FishNet Security, Inc. ("FishNet") merged to become Optiv.

31.     As part of the merger of Accuvant and FishNet, all non-competes for both companies were assigned to the newly formed Optiv.

32.     Domachowski worked for Optiv and its predecessor entity for a total of five years and two months, most recently as a Client Director.

33.     As a Client Director—a management position, Domachowski's job duties included selling Optiv security services and security technology solutions to a select few key strategic accounts and was responsible for managing and coordinating all aspects of the sales cycle within his assigned accounts. He was further responsible for managing and leading a cross-functional team to build and execute a multi-year strategic account management plan for each of his accounts.

34.     Gilbert worked for Optiv and its predecessor entity for a total of five years and six months, most recently as a Sales Support Manager.

35.     As a Sales Support Manager, Gilbert's job duties included coaching, managing, and developing a team of sales support specialists whose central focus is supporting a field sales organization with price quoting, deal registration, and order placement. The Sales Support Specialist team supports area gross margin objectives by giving account managers more time to sell.

36.     In order for Domachowski and Gilbert to perform the functions of their jobs at Optiv, they were given access to competitively sensitive or commercially valuable data or information constituting trade secrets under Colorado law, including, without limitation, corporate strategic plans, vendor information, financial information, services and operational manuals, marketing strategic information, marketing data, sales information, sales strategy

6

information, pricing data, customer lists, and internal prospect lists (referred to in the Agreements and herein as "Confidential Information").

37.     Optiv takes reasonable measures to protect the confidentiality and trade-secret nature of Confidential Information, including requiring employees, like Domachowski and Gilbert, to sign agreements in which they agree to maintain the confidentiality of such Confidential Information.

38.     Optiv further maintains its confidential information and trade secrets – such as customer lists, vendor lists, pricing, etc. – on a protected network which requires company authorization to access, a password is required to access such information, and access is limited to those individuals who require the use of the confidential information and trade secrets as part of their duties.

39.     Optiv's Confidential Information was developed over time and at substantial expense to Optiv.  To Optiv's knowledge, this Confidential Information is not known outside of Optiv, and if its competitors had access to Optiv's Confidential Information they could save substantial time and cost that they otherwise would have to expend to develop the information on their own.

40.     Optiv also provided both Domachowski and Gilbert with a significant amount of specialized and/or extraordinary training to enable them to perform their duties for Optiv's clients.

**The Agreements**

41.     As a condition of employment and access to Optiv's predecessor entity's Confidential Information, and in order to protect their employer's business assets and goodwill,

7

Domachowski entered into the Agreement with Accuvant on or about April 3, 2012, and Gilbert entered into the Agreement with Accuvant on or about May 19, 2012.

42.     As part of this merger transaction between Accuvant and FishNet (where all non-competes for both companies were assigned to the newly formed Optiv), Domachowski and Gilbert became Optiv employees, and Accuvant's rights under the Agreements were assigned to and/or inured to the benefit of Optiv.  *See* Ex. A, ¶ 17; Ex. B, ¶ 17.

43.     In Paragraph 3 of the Agreements, both Domachowski and Gilbert agreed to:

> maintain the Confidential Information in the strictest of confidence and . . . not to disclose, directly or indirectly, to disseminate, disclose, misappropriate, use, copy, digest or summarize any Confidential Information, except to the extent necessary to carry out Employee's responsibilities as directed and/or authorized by the Company. . . . Further, Employee agrees that he will not use, misappropriate, disclose or disseminate any Confidential information at any time during or after employment with the Company for the benefit of any person other than the Company.

Ex. A, ¶ 3(b); Ex. B, ¶ 3(b).

44.     Domachowski and Gilbert acknowledged that all such Confidential Information, as defined by the Agreement, constitutes a trade secret under Colorado law.  Ex. A, ¶ 3(a); Ex. B, ¶ 3(a).

45.     Domachowski and Gilbert also agreed that "[a]ll records in whatsoever form . . ., and any copies thereof, relating to the Company's business shall be and remain the sole property of the Company and shall not be removed from the Company's premises except as necessary to carry out Employee's responsibilities as directed and authorized by the Company."  Ex. A, ¶ 3(b); Ex. B, ¶ 3(b).

8

46.     In Paragraph 4 of the Agreements, Domachowski and Gilbert each agreed that for one (1) year following the termination of their respective employment, they would not:

> a.     directly or indirectly, personally, by agency, as an employee, through an entity, or by any other artifice or device, in the Prohibited Territory:
>
> i.     Canvas, solicit or accept business in the Prohibited Business with Prohibited Customers;
>
> ii.     Aid or assist any other person, entity, partnership or corporation in any effort to canvas, solicit or accept any business in the Prohibited Business with Prohibited Customers;
>
> iii.     Directly or indirectly request or advise any Prohibited Customer to withdraw, curtail, cancel or not undertake business in the Prohibited Business with the Company;
>
> iv.     Directly or indirectly disclose to any other person, entity, partnership or corporation the names of past, present or prospective customers of the Company.

Ex. A, ¶ 4(a)(i)-(iv); Ex. B, ¶ 4(a)(i)-(iv).

47.     In the Agreements, "Prohibited Territory" is defined as "the geographic territory encompassing all portions of the United States or other Country in which Prohibited Customers are located or are anticipated to be located at the time of Employee's termination." Ex. A, ¶ 2(a); Ex. B, ¶ 2(a). The term "Prohibited Customer" is defined as those customers "whom Employee worked with directly while employed at Company; . . . who was a target customer of Company and was assigned to Employee as a prospect; or . . . that has purchased goods and services from the Company within the 12-month period immediately preceding Employee's separation from the Company for no reason or any reason." Ex. A, ¶ 2(c); Ex. B, ¶ 2(c). "Prohibited Business" is defined as persons or entities "involved directly or indirectly in the Company's industry of

9

reselling information security and wireless technology, providing information security consulting services (including security assessments, technology installation, or security training), and/or providing technology or services to assist with regulatory compliance." Ex. A, ¶ 2(b); Ex. B, ¶ 2(b).

48.     Domachowski and Gilbert acknowledged that the restrictions contained in Paragraph 4 of the Agreements were "fair and reasonable." Ex. A, ¶ 4(b)-(c); Ex. B, ¶ 4(b)-(c).

49.     In Paragraph 5 of the Agreements, both Domachowski and Gilbert agreed that for two (2) years following the termination of their respective employment, they would not "directly or indirectly, suggest, solicit or encourage any employee of the Company to leave employment." Ex. A, ¶ 5; Ex. B, ¶ 5.

50.     Upon cessation of employment, both Domachowski and Gilbert agreed that they would immediately deliver to Optiv all documents containing Confidential Information, as well as any other property belonging to Optiv. *See* Ex. A, ¶ 6; Ex. B, ¶ 6.

51.     Finally, Domachowski and Gilbert each agreed and acknowledged that if any provision in the Agreement was violated, Optiv would suffer irreparable harm, would be entitled to injunctive relief to prohibit or restrain such breach or violation, and would be entitled to recover from Domachowski and Gilbert all of the reasonable legal costs and expenses incurred in enforcing the Agreement. *See* Ex. A, ¶ 13; Ex. B, ¶ 13.

### **Defendants' Misconduct**

52.     After Domachowski left his employment with Optiv in June 2017, he and at least one other former Optiv employee formed Defy.

53.     Defy is a cyber-security business and a direct competitor of Optiv.

10

54.     In 2018, Optiv received information indicating that, following the termination of Gilbert's employment with Optiv, Gilbert became employed with Defy.

55.     Upon information and belief, Domachowski solicited Gilbert and convinced him to leave Optiv's employ and become employed at Defy.

56.     Upon information and belief, Domachowski and/or Gilbert, through employment with Defy, have been improperly competing with Optiv by soliciting Prohibited Customers for the purposes of providing competing services and/or requesting or advising Prohibited Customers to cease doing business with Optiv, in violation of Colorado law and in breach of their Agreements.

57.     For example, upon information and belief, Domachowski and/or Gilbert, through their employment with Defy, have been using client lists and contact information, as well as pricing information, to undercut Optiv's pricing in an attempt to convince Prohibited Customers to move their business from Optiv to Defy.

58.     In improperly contacting Prohibited Customers in an effort to solicit their business and/or to convince them to cease doing business with Optiv, upon information and belief, Domachowski and/or Gilbert have been using Optiv's Confidential Information obtained during their employment with Optiv.

59.     Upon information and belief, Domachowski and/or Gilbert have also obtained Optiv's Confidential Information through contact with current Optiv employees, in violation of those employees' confidentiality and non-competition obligations.

11

60.     In addition, upon information and belief, Domachowski and/or Gilbert, continue to, directly or indirectly, solicit current Optiv employees to convince them to leave Optiv's employ and become employed at Defy.

61.     Upon information and belief, Defendants are still in possession of Optiv Confidential Information and trade secrets, and have used—and continue to use—such information to solicit Optiv clients for the purposes of providing competing products and services.

62.     Domachowski's conduct, as alleged herein, constitutes multiple material breaches of his Agreement, and violations of Colorado law.

63.     Gilbert's conduct, as alleged herein, constitutes multiple material breaches of his Agreement, and violations of Colorado law.

64.     Defy has encouraged, condoned, and even aided Domachowski and/or Gilbert in their unlawful conduct, all of which is to the benefit of Defendants and detriment of Optiv.

65.     As a result of Defendants' misconduct, including, without limitation, Domachowski's and Gilbert's breach of their obligations to Optiv, misappropriation of Optiv's Confidential Information, and tortious interference with current Optiv employees' restrictive covenant agreements with Optiv, as well as Defy's intentional interference with the Agreements, Optiv has been—and continues to be—damaged and irreparably harmed.

66.     Moreover, Defendants' actions have caused (and are causing) substantial and irreparable injury to Optiv, including to its client relationships.

67.     The cyber security business is highly competitive.

12

68.     Because of the integration required to serve clients in the cyber security market, once a client is lost, the likelihood that the client will return in the future, particularly near future, is highly improbable.

69.     The lost future revenue streams, lost word of mouth, lost good will and other consequences can never be fully measured, nor compensated by monetary damages.

70.     Unless Defendants' improper conduct is stopped, Optiv will continue to suffer irreparable harm.

71.     In light of Defendants' conduct, it is clear that Defendants cannot be trusted to respect the obligations contained in the Agreement, and injunctive relief is necessary to ensure that Optiv does not suffer further and continuing harm.  Upon information and belief, Defendants are continuing to engage in conduct in violation of the Agreements and Colorado law.

## FIRST CLAIM FOR RELIEF
### Injunctive Relief, Damages, and Attorneys' Fees
### for Breach of Agreement – Domachowski

72.     Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1- 69 above.

73.     The Agreement constitutes a valid and enforceable contract between Optiv and Domachowski.

74.     In the Agreement, Domachowski agreed, among other things, to abide by restrictions as to his use and retention of Confidential Information, contact with Prohibited Customers, provision of services to Prohibited Customers, and soliciting Optiv employees.

75.     These restrictions are necessary to protect Optiv's important and legitimate business interests, including, but not limited to, Optiv's Confidential Information and trade

13

secrets, other protected commercial information, relationships with clients, relationships with current employees, and goodwill.

76.     The restrictions contained in the Agreement are reasonable and narrowly tailored with respect to geographic area and duration.

77.     By virtue of the conduct described above, upon information and belief, Domachowski has violated the express terms of his Agreement, including the confidentiality and non-solicitation provisions.

78.     Further, upon information and belief, Domachowski violated the express terms of the non-solicitation provisions in his Agreement during the one-year period following the termination of his employment.

79.     As a direct and proximate result of Domachowski's breach of the Agreement and other wrongful conduct, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of its clients, employees, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

80.     Optiv has no adequate complete remedy at law, as Optiv's injuries cannot be fully quantified, and the balance of equities and public interest favor entering temporary and preliminary injunctive relief against Domachowski.

81.     Optiv is therefore entitled to temporary and preliminary injunctive relief to enjoin actual or threatened misappropriation, use, and/or dissemination of its Confidential Information and trade secrets, as well as to prevent Domachowski from improperly competing against Optiv, taking Optiv's clients, and soliciting or employing Optiv's current employees.

82.     Optiv is entitled to recover reasonable and necessary attorneys' fees and costs incurred in the prosecution of this lawsuit.

83.     Unless Domachowski is enjoined, his misconduct will continue, and Domachowski will continue to cause Optiv to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of clients, employees, future revenues and goodwill in the future, to the irreparable injury of Optiv.

84.     Because of his actions, Domochawski's obligations under his agreement should be equitable tolled.

85.     Optiv is entitled to damages, for its loss due to Damochowski's breach to the extent they can be quantified and calculated.

## SECOND CLAIM FOR RELIEF
### Injunctive Relief, Damages, and Attorneys' Fees
### for Breach of Agreement – Gilbert

86.     Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1- 85 above.

87.     The Agreement constitutes a valid and enforceable contract between Optiv and Gilbert.

88.     In the Agreement, Gilbert agreed, among other things, to abide by restrictions as to his use and retention of Confidential Information, contact with Prohibited Customers, provision of services to Prohibited Customers, and soliciting Optiv employees.

89.     These restrictions are necessary to protect Optiv's important and legitimate business interests, including, but not limited to, Optiv's Confidential Information and trade

secrets, other protected commercial information, relationships with clients, relationships with current employees, and goodwill.

90.    The restrictions contained in the Agreement are reasonable and narrowly tailored with respect to geographic area and duration.

91.    By virtue of the conduct described above, upon information and belief, Gilbert has violated the express terms of his Agreement, including the confidentiality and non-solicitation provisions.

92.    As a direct and proximate result of Gilbert's breach of the Agreement and other wrongful conduct, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of its clients, employees, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

93.    Optiv has no adequate complete remedy at law, as Optiv's injuries cannot be fully quantified, and the balance of equities and public interest favor entering temporary and preliminary injunctive relief against Gilbert.

94.    Optiv is therefore entitled to temporary and preliminary injunctive relief to enjoin actual or threatened misappropriation, use, and/or dissemination of its Confidential Information and trade secrets, as well as to prevent Gilbert from improperly competing against Optiv, taking Optiv's clients, and soliciting or employing Optiv's current employees.

95.    Optiv is entitled to recover reasonable and necessary attorneys' fees and costs incurred in the prosecution of this lawsuit.

96.    Unless Gilbert is enjoined, his misconduct will continue, and Gilbert will continue to cause Optiv to suffer losses, including the retention, disclosure and impermissible use of its

16

confidential information and trade secrets, and the loss of clients, employees, future revenues and goodwill in the future, to the irreparable injury of Optiv.

97.     Because of his actions, Gilbert's obligations under his agreement should be equitable tolled.

98.     Optiv is entitled to damages, for its loss due to Gilbert's breach to the extent they can be quantified and calculated.

## THIRD CLAIM FOR RELIEF
### Intentional Interference with Contractual Relations – Defy and Domachowski

99.     Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1-98 above.

100.    The Agreement between Gilbert and Optiv is a valid and enforceable contract.

101.    The Agreement contains valid covenants prohibiting Gilbert from directly or indirectly misappropriating, disclosing, and/or using Optiv's Confidential Information and trade secrets, and directly or indirectly soliciting or encouraging employees to leave their employ at Optiv and seek employment with any business other than Optiv.

102.    The Agreement also contains valid covenants that prohibited Gilbert from soliciting or accepting Prohibited Clients for one year following the end of his employment with Optiv.

103.    Optiv also has valid and enforceable contracts with its current employees, preventing current employees from directly or indirectly misappropriating, disclosing, and/or using Optiv's Confidential Information and trade secrets.

104. Defy and Domachowski had knowledge of the Agreement and the restrictive covenants contained therein, as well as Optiv's agreements with current employees.

105. Upon information and belief, Defy and Domachowski intentionally and improperly interfered with, and are continuing to interfere with, Gilbert's performance of the covenants contained in the Agreement by, *inter alia*, encouraging and/or allowing Gilbert to solicit and serve Prohibited Clients while employed at Defy and on Defy's and Domachowski's behalf and benefit; encouraging and/or allowing Gilbert to solicit Optiv employees while employed at Defy and on Defy's and Domachowski's behalf and benefit; and encouraging and/or allowing Gilbert to misappropriate, disclose, and/or use Optiv's Confidential Information for Defy and Domachowski's benefit and to Optiv's detriment.

106. Upon information and belief, Defy and Domachowski intentionally and without right or justifiable cause participated in, encouraged, and/or accepted the benefits of Gilbert's actions described above, which constituted breaches of the Agreement between Gilbert and Optiv.

107. Upon information and belief, Defy and Domachowski intentionally and improperly interfered with, and are continuing to interfere with, current Optiv employees' performance of confidentiality covenants contained in their agreements with Optiv by, *inter alia*, encouraging and/or allowing those employees to misappropriate, disclose, and/or use Optiv's Confidential Information for Defy and Domachowski's benefit and to Optiv's detriment.

108. Upon information and belief, Defy and Domachowski intentionally and without right or justifiable cause participated in, encouraged, and/or accepted the benefits of these current

Optiv employees' actions described above, which constituted breaches of the current Optiv employees' agreements with Optiv.

109.   Optiv has no adequate remedy at law, as Optiv's injuries cannot be fully quantified, and the balance of equities and public interest favor entering temporary and preliminary injunctive relief against Defy and Domachowski.

110.   Optiv is therefore entitled to injunctive relief to enjoin actual or threatened misappropriation, use, and/or dissemination of its Confidential Information and trade secrets; to prevent Defy and Domachowski from continuing to profit from the past use of Optiv's wrongfully procured Confidential Information; to prevent Defy and Domachowski from continuing to employ employees wrongfully solicited and hired as a result of Gilbert's breach of his Agreement; and to prevent Defy and Domachowski from continuing to serve Optiv customers that it would not have serviced but for Gilbert's breach of his Agreement.

111.   Additionally, as a direct and proximate result of the wrongful conduct of Defy and Domachowski, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of its clients, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

112.   Unless Defy and Domachowski are enjoined, this misconduct will continue, and they will continue to cause Optiv to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of clients, potential or current employees, future revenues and goodwill, to the irreparable injury of Optiv.

113.    As a direct and proximate result of the wrongful conduct of Defy and Domachowski, Optiv has been and will continue to be damaged in an amount in excess of $75,000, to be proven at trial.

114.    Because of Defy and Domochaowski's purposeful and willful actions, Optiv is entitled to putative damages

**FOURTH CLAIM FOR RELIEF**
**Intentional Interference with Prospective Business Advantage – Domachowski and Gilbert**

115.    Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1- 114 above.

116.    Optiv had long-standing business relationships with many of the Optiv clients who worked with Domachowski and/or Gilbert during their employment, and an expectation that these business relationships would continue into the future. These clients include Clients A, B, C, D, E, and F.[2]

117.    Domachowski and Gilbert had knowledge of the long-standing relationships Optiv has with many of these clients, including, but not limited to, Clients A, B, C, D, E, and F.

118.    Upon information and belief, Domachowski and Gilbert intentionally and improperly interfered with Optiv's long-standing relationships with its clients, including, but not limited to Clients A, B, C, D, E, and F by, *inter alia*, requesting or advising Optiv's clients to cease doing business with Optiv, soliciting and serving Optiv clients on Defy's behalf, and using Optiv's Confidential Information to engage in these actions, all in violation of their Agreements and/or Colorado law.

---

[2] Optiv has kept the identity of its lost clients private for the purposes of this Complaint.  However, once a protective order has been issued by the Court, Optiv will reveal the identity of the clients taken by Defendants.

119.    Optiv has no adequate remedy at law, as Optiv's injuries cannot be fully quantified, and the balance of equities and public interest favor entering temporary and preliminary injunctive relief against Domachowski and Gilbert.

120.    Optiv is therefore entitled to injunctive relief to enjoin Domachowski and Gilbert from continuing to request or advise Optiv's clients to cease doing business with Optiv and continuing to solicit and serve Optiv clients on Defy's behalf, in violation of their Agreements and/or Colorado law.

121.    Additionally, as a direct and proximate result of the wrongful conduct of Domachowski and Gilbert, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of Optiv clients, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

122.    Unless Domachowski and Gilbert are enjoined, this misconduct will continue, and Domachowski and Gilbert will continue to cause Optiv to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of clients, employees, future revenues and goodwill, to the irreparable injury of Optiv.

123.    As a direct and proximate result of the wrongful conduct of Domachowski and Gilbert, Optiv has been and will continue to be damaged in an amount in excess of $75,000, to be proven at trial.

124.    Because of Gilbert and Domochaowski's purposeful and willful actions, Optiv is entitled to putative damages.

21

### FIFTH CLAIM FOR RELIEF
**Intentional Interference with Prospective Business Advantage – Defy**

125.    Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1- 124 above.

126.    Optiv had long-standing business relationships with many of the Optiv clients who worked with Domachowski and/or Gilbert during their employment, and an expectation that these business relationships would continue into the future.

127.    Defy had knowledge of the long-standing relationships Optiv has with many of these clients.

128.    Upon information and belief, Defy intentionally interfered with Optiv's long-standing relationships with its clients by, *inter alia*, hiring Domachowski and Gilbert; encouraging and/or allowing Domachowski and Gilbert to solicit and serve Optiv clients on Defy's behalf; encouraging and/or allowing Domachowski and Gilbert to solicit Optiv employees; and encouraging and/or allowing Domachowski and Gilbert to misappropriate, disclose, and/or use Optiv's Confidential Information for Defy's benefit and to Optiv's detriment.

129.    Defy intentionally and without right or justifiable cause participated in, encouraged, and/or accepted the benefits of Domachowski's and Gilbert's actions described above, which constituted breaches of the Agreement between Domachowski and Optiv, breaches of the Agreement between Gilbert and Optiv, and violation of Colorado law.

130.    Optiv has no adequate remedy at law, as Optiv's injuries cannot be fully quantified, and the balance of equities and public interest favor entering temporary and preliminary injunctive relief against Defy.

131.    Optiv is therefore entitled to injunctive relief to enjoin actual or threatened misappropriation, use, and/or dissemination of its Confidential Information and trade secrets; to prevent Defy from continuing to profit from the past use of Optiv's wrongfully procured Confidential Information; and to prevent Defy from continuing to serve Optiv customers that it would not have serviced but for Domachowski's and/or Gilbert's breaches of their respective Agreements.

132.    Additionally, as a direct and proximate result of the wrongful conduct of Defy, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of Optiv clients, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

133.    Unless Defy is enjoined, this misconduct will continue, and Defy will continue to cause Optiv to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of clients, employees, future revenues and goodwill, to the irreparable injury of Optiv.

134.    As a direct and proximate result of the wrongful conduct of Defy, Optiv has been and will continue to be damaged in an amount in excess of $75,000, to be proven at trial.

135.    Because of Defy's purposeful and willful actions, Optiv is entitled to putative damages.

## SIXTH CLAIM FOR RELIEF
### Civil Conspiracy – All Defendants

136.     Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1- 135 above.

137.     Upon information and belief, Defendants agreed and conspired together to cause current and former Optiv employees to unlawfully breach their agreements with Optiv (including, without limitation, Domachowski and Gilbert) and to tortiously interfere with Optiv's long-standing business relationships with its clients.

138.     In furtherance of the above-described agreement and conspiracy, Defendants committed unlawful and overt acts, including, without limitation, Domachowski and/or Gilbert soliciting and serving Optiv clients; Defy encouraging and/or allowing Domachowski and/or Gilbert to solicit and serve Optiv clients on Defy's behalf and in competition with Optiv; Domachowski and/or Gilbert soliciting Optiv employees on Defy's behalf; Defy encouraging and/or allowing Domachowski and/or Gilbert to solicit Optiv employees on Defy's behalf; and Defy encouraging and/or allowing Domachowski and/or Gilbert to misappropriate, disclose, and/or use Optiv's Confidential Information and trade secrets for Defy's benefit and to Optiv's detriment.

139.     Optiv has no adequate remedy at law, as Optiv's injuries cannot be fully quantified, and the balance of equities and public interest favor entering temporary and preliminary injunctive relief against Defendants.

140.     Optiv is therefore entitled to temporary and preliminary injunctive relief against Defendants to enjoin actual or threatened misappropriation, use, and/or dissemination of its

24

Confidential Information and trade secrets; to prevent Defendants from continuing to profit from the past use of Optiv's wrongfully procured Confidential Information; to prevent Defendants from continuing to employ employees wrongfully solicited and hired; and to prevent Defendants from continuing to serve Optiv customers that it would not have serviced but for Domachowski's and/or Gilbert's breaches of their respective Agreements.

141.    Additionally, as a direct and proximate result of the wrongful conduct of Defendants, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of Optiv clients, employees, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

142.    Unless Defendants are enjoined, this misconduct will continue, and Defendants will continue to cause Optiv to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of clients, employees, future revenues and goodwill, to the irreparable injury of Optiv.

143.    As a direct and proximate result of Defendants' conspiracy, Optiv has been and will continue to be damaged in an amount in excess of $75,000, to be proven at trial.

144.    Because of Defendant's purposeful and willful actions, Optiv is entitled to putative damages.

## SEVENTH CLAIM FOR RELIEF
### Violation of the Colorado Uniform Trade Secrets Act,
### C.R.S. § 7-74-101 *et seq.* – All Defendants

145.    Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1- 144 above.

146.    Optiv Confidential Information and trade secrets that are not generally known to the public and derive independent economic value from not being generally known to the public or others who could obtain economic value from its disclosures or use.

147.    Such Confidential Information and trade secrets include, but are not limited to customer lists, pricing lists, prospect lists, product lists, vendor lists, and employee lists.

148.    Optiv makes reasonable efforts to maintain its Confidential Information and trade secrets confidential. For example, Optiv maintains its confidential information and trade secrets – such as customer lists, vendor lists, pricing, etc. – on a protected network which requires company authorization to access, a password is required to access such information, and access is limited to those individuals who require the use of the confidential information and trade secrets as part of their duties.

149.    Upon information and belief, Domachowski and/or Gilbert had access to and improperly took Optiv's Confidential Information and trade secrets without Optiv's permission.

150.    Defendants improperly possess and have used Optiv's Confidential Information and trade secrets to their economic benefit.   For example, upon information and belief, Defendants are using Optiv's Confidential Information to contact Optiv customers in an effort to convince them to leave Optiv and bring their business to Defendants.

151.    Defendants know that they have derived Optiv's Confidential Information and trade secrets through improper means.

152.    Optiv has no adequate remedy at law, as Optiv's injuries cannot be fully quantified, and the balance of equities and public interest favor entering a preliminary injunctive relief against Defendants.

153.     Optiv is therefore entitled to preliminary injunctive relief against Defendants to enjoin actual or threatened misappropriation, use, and/or dissemination of its Confidential Information and trade secrets; to prevent Defendants from continuing to profit from the past use of Optiv's wrongfully procured Confidential Information; and to prevent Defendants from continuing to serve Optiv customers that they, but for Domachowski's and/or Gilbert's breaches of their respective Agreements, would not have obtained.

154.     Additionally, as a direct and proximate result of the wrongful conduct of Defendants, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of Optiv clients, employees, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

155.     Unless Defendants are enjoined, this misconduct will continue, and Defendants will continue to cause Optiv to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of clients, employees, future revenues and goodwill, to the irreparable injury of Optiv.

156.     Further, as a direct and proximate result of Defendants' actions, Optiv has been and will continue to be damaged in an amount in excess of $75,000, to be proven at trial.

**EIGHTH CLAIM FOR RELIEF**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* – All Defendants**

157.     Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1-156 above.

27

158.   Optiv owned trade secrets and confidential information that derives independent economic value, actual or potential, from not being generally known or ascertainable only through proper means.

159.   Optiv takes and has taken reasonable measures to keep such information secret.

160.   Optiv's trade secrets are related to cyber security products and services that are used and sold in interstate commerce.

161.   Defendants acquired, disclosed, and/or used Optiv's trade secrets through improper means and without the permission of Optiv.

162.   Optiv has no adequate remedy at law to stop the continued damage Defendants has caused by their unlawful conduct, as Optiv's injuries cannot be fully quantified, and the balance of equities and public interest favor entering a preliminary injunctive relief against Defendants.

163.   Optiv is therefore entitled to preliminary and permanent injunctive relief against Defendants to enjoin actual or threatened misappropriation, use, and/or dissemination of its Confidential Information and trade secrets; to prevent Defendants from continuing to profit from the past use of Optiv's wrongfully procured Confidential Information; and to prevent Defendants from continuing to serve Optiv customers that they, but for Domachowski's and/or Gilbert's breaches of their respective Agreements, would not have obtained.

164.   Additionally, as a direct and proximate result of the wrongful conduct of Defendants, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of Optiv clients, employees, goodwill, revenues, and profits; and diminution in the value of its business.

28

165.     Unless Defendants are enjoined, this misconduct will continue, and Defendants will continue to cause Optiv to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of clients, employees, future revenues and goodwill, to the irreparable injury of Optiv.

166.     As a direct and proximate result of Defendants' actions, Optiv has been and will continue to be damaged.

## NINTH CLAIM FOR RELIEF
### Unjust Enrichment – Defy Security

167.     Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1-166 above.

168.     Defy has been unjustly enriched by Domachowski and Gilbert's breach of their respective non-competition covenants and their unlawful procurement of Optiv's trade secrets and confidential information.

169.     Defy is still being enriched and will continue to be enriched by receiving economic benefit from the use of Optiv's confidential information and trade secrets.

170.     Defy has been put on notice of Domachowski's and Gilbert's breaches and their use of Optiv's confidential information and trade secrets to Defy's benefit; yet Deny has not ceased Domachowski and Gilbert's activities and continues to profit from their actions.

171.     It is unjust for Defy to retain the benefits from the unlawful procurement of Optiv's trade secrets and confidential information.

172.     As a direct and proximate result of the wrongful conduct of Defy, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of Optiv

clients, employees, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

## PRAYER FOR RELIEF

WHEREFORE, Optiv requests the following relief:

A.      an order tolling the restrictive covenants in Domachowski's and Gilbert's Agreements to account for any period of violation during the original restricted periods;

B.      a preliminary injunction enjoining Domachowski and Gilbert, and a preliminary injunction and permanent injunction enjoining Defy, from directly or indirectly soliciting Prohibited Customers;

C.      a preliminary injunction enjoining Domachowski and Gilbert, and a preliminary injunction enjoining Defy, from soliciting and/or encouraging Optiv employees to work for Domachowski, Gilbert, and/or Defy;

D.      a preliminary injunction and permanent injunction enjoining Domachowski and Gilbert from otherwise violating their respective Agreements;

E.      a preliminary injunction and permanent injunction enjoining Domachowski and Gilbert, and a preliminary injunction and permanent injunction enjoining Defy, from using or disclosing Optiv's Confidential Business Information and trade secrets;

F.      an order requiring Defendants to return immediately any Confidential Information and trade secrets to Optiv currently in the possession of Domachowski, Gilbert, and/or Defy, and affirm that they no longer have any Confidential Information in any format in their possession, custody, or control;

30

G.      an award of attorneys' fees and costs of suit incurred herein against Domachowski and Gilbert; and

H.      actual damages, disgorgement of profits, pre and post judgment interest on any award, and punitive damages against Domachowski, Gilbert, and Defy; and

I.      a preliminary injunction and permanent injunction against Defy enjoining it from either directly or indirectly tortiously interfering with or conspiring with Domachowski and/or Gilbert to violate their respective Agreements with Optiv, including being enjoined from encouraging, supporting, investing, enabling, and/or concealing breaches of those Agreements with Optiv; and

J.      a preliminary injunction, and permanent injunction against Defy enjoining it from either directly or indirectly participating in or receiving or retaining benefits from the violation of Domachowski's and/or Gilbert's respective Agreements with Optiv, including being enjoined from encouraging, supporting, investing, enabling, and/or concealing Domachowski's and/or Gilbert's respective Agreements with Optiv, and from otherwise depriving Optiv of the benefit of its bargain under its Agreements with Domachowski and Gilbert; and such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff requests trial by jury.

Respectfully submitted,


By: _s/ Donald L. Samuels_____

    DONALD L. SAMUELS, #26654
    SEAN R. GALLAGHER, #16863
    POLSINELLI, PC
    1401 Lawrence Street, Suite 2300
    Denver, CO  80202
    (303) 572-9300
    Fax No.:  (303) 572-7883

    ATTORNEYS FOR PLAINTIFF

**Plaintiff's Address**
1144 15th Street, Suite 2900
Denver, CO  80202

**VERIFICATION**

STATE OF ___KABKOS___ )
                             ) ss.
COUNTY OF ___JOHNSON___ )

The undersigned, ___JASON MALEY___, first duly sworn, states that he is personally familiar with or informed of all factual matters set forth in the foregoing Verified Complaint for Injunctive and Other Relief, and, to the best of his knowledge and belief, all facts stated therein are true.

OPTIV SECURITY INC.

Subscribed and sworn to before me this _27_ day of August, 2018.

Notary Public in and for said County and State

My Commission Expires:

___7-10-19___

NOTARY PUBLIC - State of Kansas
Deborah Swegel
My Appt. Expires 7-10-19